(169 App. Div. 544)

## In re COHEN.

(Supreme Court, Appellate Division, First Department. November 5, 1915.)

1. ATTORNEY AND CLIENT ⬉44—PROFESSIONAL MISCONDUCT—EXTORTION.

It is no less improper for an attorney to take advantage of his client's necessities and inexperience, and induce him to make in advance a contract to pay an exorbitant fee, than it is to extort an unreasonable fee after rendition of services, and in neither case does it lessen the impro-

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

priety for the attorney to make a settlement with his client under the spur of disciplinary proceedings.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 55, 56, 62; Dec. Dig. ☞44.]

2. ATTORNEY AND CLIENT ☞53—DISBARMENT—UNREASONABLE FEE—EVIDENCE.

In a proceeding for the disciplining of an attorney, evidence *held* to show that, taking advantage of his client's necessities and inexperience, he extorted an unreasonable fee.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 74, 75; Dec. Dig. ☞53.]

3. ATTORNEY AND CLIENT ☞44—PROFESSIONAL MISCONDUCT—DISBARMENT.

Where, after an attorney had extorted an unreasonable fee from his client, he fled the jurisdiction of the court, in order to render it powerless to enforce its order requiring him to return a large portion of the fee, and then, while out of the jurisdiction, effected a settlement with his client, he was guilty of conduct warranting disbarment.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 55, 56, 62; Dec. Dig. ☞44.]

In the matter of the application for the disbarment of Louis H. Cohen, an attorney. On report of official referee on charges of professional misconduct. Respondent disbarred.

See, also, 152 App. Div. 883, 136 N. Y. Supp. 1133.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Einar Chrystie, of New York City, for petitioner.

George G. Battle, of New York City, for respondent.

PER CURIAM. The respondent is charged with having taken advantage of the inexperience and necessities of a client to extort from him an exorbitant and unconscionable fee for certain legal services rendered, and it is also charged that, after an order had been made requiring him to repay a large part of the fee retained, he fled from the jurisdiction of the court to avoid the enforcement of its order. On the first charge the official referee has exonerated the respondent. On the second he has found him guilty.

[1, 2] The evidence, which we have not failed to examine with care, shows that in the year 1908 the respondent had for a client, and apparently for an intimate friend, one Berthold A. Rich, who was in dire financial straits. Under the will of his father, who had died in the year 1894, Rich received a life interest in valuable real estate in the city of New York, subject to the obligation to pay all taxes and assessments which might be laid upon the property. Rich was a spendthrift. He was inexperienced in business matters, was careless in his mode of life, and addicted to luxurious living. He constantly lived beyond his income, and was obliged to borrow money from time to time to meet his living expenses. Many of these loans were negotiated by the respondent, who thus became acquainted with Rich's financial condition. Finally matters came to such a pass that the taxes upon the property had fallen largely in arrears, and the city of New York had advertised the property for sale in June, 1909. The respondent

suggested that proceedings could be instituted, under sections 67–71 of the Real Property Law (Consol. Laws, c. 50) for the sale of the incumbered property, and represented to Rich that such a sale and the investment of the proceeds would substantially increase his income. Rich thereupon retained him to take such proceedings, and they were accordingly taken; the property being sold for the sum of $110,200. The value of Rich's life estate was fixed at $70,275.80, out of which was deducted $29,736.89 for unpaid taxes, leaving a balance of $49,-538.91 to be paid to Rich. Two checks representing this amount were made out and delivered to Rich, who at once indorsed them over to the respondent, who deposited them in his bank. At that time, or shortly afterwards, the respondent prepared, and Rich signed, a letter directing how this money was to be disposed of. The letter was addressed to the respondent, and instructed him, in addition to the payment of a number of Rich's debts, to pay to Rich the sum of $15,000, and to retain as payment for his services the sum of $17,619.59. These instructions were carried out, and the present charge is that the retention of so large a fee was extortionate and unreasonable.

In October, 1910, Rich began a summary proceeding in the Supreme Court to compel respondent to return to him all the money retained, except what might be held to be a reasonable fee. An order was made appointing a referee to inquire into the facts and report to the court. After an unsuccessful appeal by respondent from the order, the reference proceeded, and in due time the referee made his report. He found that, in addition to the fee above referred to, the respondent had received an allowance of $1,000 in the proceeding, and had shared in the commissions paid to a real estate broker for negotiating the sale of the property. He reported as his opinion that the value of respondent's services in the proceeding for a sale was $3,500, and that he should be allowed $581.35 for disbursements, and $250 for his services in procuring certain loans. In conclusion, the referee found that there was due from respondent to his client, Rich, the sum of $14,169.74. This report was confirmed by the Supreme Court by an order entered September 7, 1911, directing respondent to repay to Rich the sum of $16,767.50 within five days after service of a certified copy of the order. Such service and a demand for payment was thereupon made. Respondent appealed from this order, but his appeal was not pressed, and was dismissed in October, 1911. The next step, of course, would have been a proceeding to enforce the order for restitution by contempt proceedings. Respondent, realizing this, and with a view to defeat the jurisdiction of the court, left the country and remained absent until he had effected a settlement with Rich, which he did in March, 1912, by the payment of $10,000 in cash and $2,000 in notes. This settlement was made after the present proceeding was commenced.

The official referee, differing in this respect from the referee in the summary proceedings and from the court which confirmed his report, is of the opinion that the fee of $17,619.59 retained by respondent was no more than a reasonable fee for the services performed. With this conclusion we find ourselves unable to agree. The proceeding was

neither intricate nor unusually difficult, and while the respondent appears to have spent considerable time about it, and to have found it necessary to consult other attorneys as to the procedure, this was due rather to his own inexperience than to any especial complexity in the procedure. We are of the opinion that the value placed upon the services by the referee and the Supreme Court in the summary proceeding was reasonable, and indeed liberal. That the client, Rich, consented to the retention of the larger sum is unquestioned, but it is clear that he did so in reliance upon respondent's advice that the fee was a reasonable one, such as reputable attorneys were in the habit of charging in like circumstances, a statement which the client accepted because of his faith in his attorney and his ignorance of business affairs.

It was attempted on this proceeding, but not in the summary proceeding, to show that the sum retained by the respondent was less than Rich had previously agreed to pay him; that at about the time of the commencement of the proceeding to sell the real property, or shortly thereafter, Rich had agreed to pay respondent the sum of $20,000 for his services, and that respondent had actually conceded something by retaining the lesser sum. Much testimony was taken respecting the making of this prior agreement, which was denied by Rich, and it is dwelt upon by the official referee as an important factor in the case. We consider it unimportant, so far as concerns respondent's culpability, whether this prior agreement was made or not. It is no less improper for an attorney to take advantage of his client's necessities and inexperience to induce him to make a contract in advance to pay an exorbitant fee for services than it is to take advantage of those necessities and that inexperience to exact an unreasonable fee after the services have been rendered. Nor does it lessen the impropriety of respondent's conduct that, under the spur of disciplinary proceedings, he made a settlement with his client, and paid a substantial part of the moneys which he had been adjudged to owe him. These proceedings are not designed to compel payments, but to protect and preserve the honor and integrity of the legal profession. In our opinion the charge that respondent took advantage of Rich's inexperience and deceived him as to the true value of the services rendered, thereby exacting and retaining an unreasonable sum for the services rendered is sustained.

[3] An even more serious charge, to wit, that after the entry of the order directing him to make restitution respondent fled the jurisdiction of the court in order to render it powerless to enforce its order is practically admitted, or at least proven beyond the possibility of a doubt. It is quite true that, save under very special circumstances, a court will not ordinarily discipline an attorney for a mere failure to pay over money, which he has been directed to pay by order or judgment. The law provides other remedies by which such payment may ordinarily be enforced, and if there were nothing before us save the respondent's failure to pay over the money which he was required to pay by the order of September 7, 1911, we should hesitate to punish him for such failure, which might have been due to inability, rather than contumacy. His serious offense, however, consisted in fleeing the jurisdiction with the intent and purpose to render the court powerless to en-

force its order, and thus to prevent the application of the remedies provided by law. Such action on the part of an attorney is most reprehensible, and has for many years been considered in England as a sufficient reason for striking an attorney off the rolls. This course was followed by the Court of Queen's Bench, sitting in banc, in 1846, in the course of which Lord Denman, who delivered the judgment of the court, referred to a similar case which had arisen as early as 1821. See 10 Jurist, part I, p. 198, and Ex parte A. B., an attorney, 4 Jurist, 630.

In every aspect the conduct of the respondent calls for the most severe condemnation, which could not be adequately expressed by a mere censure, or even by a temporary suspension from practice. He has shown himself to be so completely lacking in a due sense of the duty which a lawyer owes to his client and to the court that he has demonstrated his unfitness to remain a member of the bar.

He is therefore disbarred. Settle order on notice.