In the Matter of ROCCO D. POTENZA, an Attorney, Respondent. ONEIDA COUNTY BAR ASSOCIATION, Petitioner.

Fourth Department, February 15, 1968.

*Roger H. Williams* for petitioner.

*Vincent De Iorio* for respondent.

*Per Curiam.* Respondent was admitted to the Bar by this court on July 10, 1957. The petition in this disciplinary proceeding alleges that Potenza charged and collected from Mr. and Mrs. Anthony Frankewich fees that were unconscionably exces-

sive. The Judge to whom the matter was referred has reported, following a hearing, that the charge has been sustained.

In 1962 Frankewich was sentenced in Herkimer County Court to three consecutive sentences of 3½ to 5 years upon certain counts of an indictment (No. 6012) charging grand larceny first degree. Three other sentences on three other indictments each of 3½ to 5 years were imposed to run concurrently with each other, but not with the consecutive sentences imposed. The court in imposing sentence directed that in the event full restitution was made to the complainants named in all four indictments before termination of the first consecutive sentence imposed on indictment No. 6012 then sentence would be suspended on the remaining counts.

In February, 1964 Mrs. Frankewich was living in the Village of Herkimer with her four children, and at the request of her husband, who was in Auburn Prison, talked with respondent about "taking her husband's case." Potenza requested and received $150 for his expenses to go to Auburn to interview the husband.

A few days later respondent returned and reported to Mrs. Frankewich that he had talked with her husband; that the sentence was "all wrong" and that he could have her husband home in three or four months. He stated that his fee would be $2,000. Mrs. Frankewich and her children were then receiving public welfare assistance. She told Potenza that she would have to borrow the money. She raised the stated amount — part by direct loan from a relative and the remainder from a bank "with the backing" of the same relative. The $2,000 was paid to Potenza.

During the following two months respondent visited Frankewich at the prison on two occasions. Both husband and wife complained of the lack of action. In May, 1964 they were advised that a habeas corpus proceeding had been scheduled for June 4. Shortly before that date Potenza called Mrs. Frankewich and requested another $2,000. He was told that the request "was silly" as she did not have that amount. The day before the scheduled hearing respondent again called and asked if she had the money. Upon receiving a negative reply Potenza said he could not go to Auburn. He then asked for $150 and told Mrs Frankewich to send what she could. She borrowed $50 and mailed the cash to him. Respondent admits receiving these various amounts totaling $2,200.

The hearing scheduled for June 4 was adjourned because respondent was busy elsewhere. Mrs. Frankewich then expressed her dissatisfaction to respondent and told him that

her husband wanted to discharge him. Respondent was angry and said he knew the Judge very well, played golf with him and that "more things were settled on the golf course than in court." Potenza continued his representation of Frankewich.

The proceeding was heard on June 25, 1964. The petition, so far as material, alleged "that the sentence * * * [was] illegal and highly speculative and indeterminate" and that the court attached a condition that was illegal and without its jurisdiction. The hearing lasted about five minutes. Following brief oral arguments by respondent and an Assistant Attorney-General the writ was dismissed. The court in substance held that defendant was then serving the first imposed sentence; that the time for the taking effect of the stated condition, whether legal or illegal, had not yet arrived and that the application for relief was premature. Thereafter, the demand of Mrs. Frankewich that the $2,200, or some part of it, be returned was refused by respondent.

Potenza testified that following his first conference at the prison with Frankewich he talked with the Oneida County Probation Officer, who is not a lawyer, as respondent considered him " an expert regarding sentencing." He talked with another lawyer and a Judge with inconclusive results. He researched the law of habeas corpus and *coram nobis* from their respective origins and examined various legal books, including Abbott's Digest. Curiously, however, he made no notes of legal principles or authorities resulting from such research, and submitted no brief at the hearing. After this legal research he told Frankewich that habeas corpus was the proper proceeding and not *coram nobis*; that his fee would be $2,000 and in the event of an appeal his total fee would be $5,000. Upon the hearing herein he could produce no record of the amount of time devoted to the matter.

A schedule of fees of petitioner disclosed that in 1964 the suggested per diem fee for civil or criminal trial work in Oneida County was $150 and for office work $100. Respondent's thinking on the subject of legal fees is perhaps revealed by the testimony of another lawyer called by Potenza. That attorney testified that he paid no attention to any schedule of fees — " if I'm going to work for a man and he agrees on how much to pay me, that ends the matter." The law, of course, is to the contrary. *Matter of Cohen* (169 App. Div. 544, 547) where it was said that " It is no less improper for an attorney to take advantage of his client's necessities and inexperience to induce him to make a contract in advance to pay an exorbitant fee for services, than it is to take advantage of those necessities

and that inexperience to exact an unreasonable fee after the services have been rendered.''

We concur in the factual findings of the hearing Judge and his conclusion that the fee was unconscionably excessive. While no such charge is contained in the petition it might be found that these parties — a husband in prison and a wife on relief — were defrauded by the acts of respondent. Without reaching the issue of the legality of the sentence (cf. *People ex rel. Rainone* v. *Murphy,* 1 N Y 2d 367; *People ex rel. Paris* v. *Hunt,* 201 App. Div. 573, affd. 234 N. Y. 558; Penal Law, § 2188) it is apparent that a minimum of legal research would have disclosed to respondent that in 1964 the first concededly valid sentence was in full force and effect and that the application for relief by habeas corpus was premature. (Cf. *People ex rel. Dote* v. *Martin,* 294 N. Y. 330, 333; *People ex rel. Young* v. *Martin,* 270 App. Div. 1069, affd. 297 N. Y. 892; *People ex rel. Metz* v. *Fay,* 11 A D 2d 1067; Habeas Corpus and the Prematurity Rule, 66 Col. L. Rev. 1164, 1166.)

It scarcely needs repetition that it is unprofessional for an attorney to act toward a client otherwise than with the utmost good faith. '' In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade.'' (Canons of Professional Ethics, canon 12.) Charging an exorbitant fee grossly disproportionate to the services performed is misconduct that warrants disciplinary action. (*Matter of Relin,* 19 A D 2d 460; *Matter of Cohen,* 169 App. Div. 544 *supra;* Ann. 70 ALR 2d 962, 967.) See, also, *Matter of Karp* (240 App. Div. 388, 395) where it was held to be professional misconduct to demand an additional fee after the attorney had agreed to perform the services for a stated amount that had been paid. There, as here, the demand was made on the eve of the attorney's appearance in court.

Moreover, upon all the proof we doubt that respondent made any serious or intensive research of the pertinent legal principles. It appears that at both the habeas corpus hearing and upon the trial herein respondent could advance no tenable legal theory upon which the application for relief was made. He was content to casually question other lawyers and public officials about the sentence and then go through the formality of seeking relief by habeas corpus. In the light of these facts his statement to Mrs. Frankewich that her husband would be home in three or four months was a deceitful promise. The Canons of Professional Ethics (canon 8) warns '' lawyers to beware of

bold and confident assurances to clients, especially where the employment may depend upon such assurance.''

Equally reprehensible was the conduct of respondent in stating to Mrs. Frankewich that he was well acquainted with the Judge, who was to preside at the hearing; that he had played golf with him and intimating that the application might be decided by the court upon other than the legal issues. Such conduct tends to bring both the legal profession and the judiciary into disrepute. All of this was considerably less than the performance of the duty that rested on respondent to '' strive at all times to uphold the honor and to maintain the dignity of the profession and to improve not only the law but the administration of justice.'' (Canons of Professional Ethics, canon 29.)

Respondent should be suspended for a period of one year.

BASTOW, J. P., GOLDMAN, DEL VECCHIO, MARSH and HENRY, JJ., concur.

Order entered suspending respondent for a period of one year and thereafter until further order of the court.