AMERICAN NATIONAL BANK AND TRUST COMPANY OF SHAWNEE, Shawnee, Oklahoma; Raymond Harber; Frances Robertson; Henry Harber Lampl; Maurice B. Lampl, II; David Allan Lampl; and William Dwight Harber, as Executors of the Estate of Winford Elmer Harber, Deceased, Appellees,

v.

CLARKE & VAN WAGNER, INC., a Professional Corporation; Sidney R. Clarke, III; and George Van Wagner, Appellants.

No. 59060.

Court of Appeals of Oklahoma, Division 2.

July 17, 1984.

Rehearing Denied Sept. 6, 1984.

Certiorari Denied Nov. 20, 1984.

Released for Publication by Order of Court of Appeals Nov. 21, 1984.

Peter B. Bradford, Bradford, Haswell & Jones, Oklahoma City, for appellees.

Val R. Miller, Crowe & Dunlevy, Oklahoma City, for appellants.

MEANS, Presiding Judge.

Attorneys who represented estate appeal from summary judgment granted in favor of executors. This court previously affirmed the order granting summary judgment in a summary opinion issued October 11, 1983. Upon direction for a reasoned opinion from the Oklahoma Supreme Court, we have re-examined all the issues presented. Order affirmed.

Attorneys Sidney R. Clarke, III, and George Van Wagner, represented the executors in the estate of W.E. Harber. In 1975, pursuant to the terms of an order allowing fees, the attorneys were paid $275,000 for services rendered. The final decree of distribution was filed in the Harber estate in April 1976. This final order was appealed by certain of the legatees and devisees under the Harber will. Four of the executors were also appellants. As an assignment of error in that appeal, the appellants contended:

1. The trial court erred by granting an excessively large attorney fee, in the amount of Two Hundred and Seventy-Five Thousand Dollars ($275,000) to the firm of Clarke and Van Wagner, Inc., in that:

(i) The court's decision and order is not sustained by sufficient evidence establishing the reasonableness of such a large attorney fee. On the contrary, the evidence establishes that a proper fee would be considerably less.

(ii) The court's decision and order is contrary to the law requiring that attorneys' [sic] fees paid from the assets of an estate be only such amount as will reasonably compensate him for his services rendered for the benefit of said estate.

Clarke and Van Wagner represented the executors who were the appellees in the previous appeal. We presume this representation included writing a brief which supported the reasonableness of the attorneys' fee which they had been awarded. Without a doubt, the attorneys knew that the reasonableness of the size of their fee was to be addressed by the appellate court.

This previous appeal was assigned to the Oklahoma Court of Appeals, Division 1, which rendered a decision on March 7, 1978, in case number 49,669. Petition for certiorari was denied on April 30, 1979, and the decision was mandated.[1] The opinion shows that George Van Wagner represent-

---

1. Concerning the issue of the reasonableness of the attorneys' fees, we quote the following from the court of appeals' decision:

Mr. Sid Clarke of Clarke & Van Wagner, Inc., the law firm that represented the executors all the way through this probate and in this appeal, testified in response to a question as to the number of hours spent on this case to December 22, 1976, as follows:

"A Yes, our office keeps daily time records, which I have available for you and I, we keep our own, and we have totalled up those hours as 1,236 hours to date in the estate itself, these are the hours, the time, that we have recorded. We will, of course, miss hours. Regardless of the way we charge, we do nevertheless keep our time as a personal thing for us to find out what we are doing and in order to have a record of what we did if we

ever need it, but we have kept records in the estate and those are our hours."

And on cross-examination, Attorney Clarke testified:

"Q And could you tell me what your fees are on an hourly basis for regular clients that come and wish to engage your professional services?

A Well, it depends on what sort of work is being done, but you can use $40.00 an hour for those jobs in the office, those engagements, that we do charge on an hourly basis for.

Q And $40.00 an hour is your standard charge for office work for both you and Mr. Van Wagner?

A Well, it is mine, and it is an ordinary amount that we would charge on corporate and other matters.

* * * * * *

ed the estate on appeal and filed a brief in support of the final accounting and award of attorneys' fees.

In its opinion, the court of appeals noted that the trial court had awarded the attorneys' fee based on the amount which the executors had received. In reversing that part of the order which had set the attorneys' fees at $275,000, the court of appeals stated:

> There is no valid reason for setting the attorneys' fees the same as the executors' fee. A percentage fee or a commission fee for attorneys in probate cases went out with the minimum fee schedule. *In our opinion, in the light of the record herein, the allowance for the attorneys' fees was excessive, and we hereby reduce such fees, including work to date, to the sum of $150,000.00.* (emphasis added)

The executors who had paid Clarke and Van Wagner the excessive and unreasonable fee, made demand for a return of the $125,000 overpayment. When the attorneys refused to return the money, the executors filed this lawsuit against Clarke and Van Wagner, Inc., and the attorneys as individuals.

In March 1982, the executors moved for summary judgment, contending that there was no substantial controversy as to any material fact. The trial court granted summary judgment for the executors and Clarke and Van Wagner appealed.

### I

■ As their first proposition of error, the attorneys state that summary judgment was inappropriate because there were substantial controversies concerning material facts. As Clarke and Van Wagner point out, a motion for summary judgment may be sustained only if no question concerning any material fact remains to be determined. *Garner v. Johnson*, 609 P.2d 760, 762–63 (Okla.1980). However, the trial court's ruling on a motion for summary judgment must be made on the record which the parties *have actually presented* and not on a record which is potentially possible. *Northrip v. Montgomery Ward & Co.*, 529 P.2d 489, 494 (Okla.1974).

The attorneys contend that the trial court entered judgment without hearing all the facts and "before the court even went to the trouble of determining" the issues of fact which would have precluded summary judgment. They assert that evidence of these issues of fact would have been presented "if the court had waited to hear the facts." In sustaining the motion for summary judgment, the attorneys state that the court denied them the opportunity "to fully present all of the facts and factors involved and have their day in court."

■ In so contending, Clarke and Van Wagner ignore the procedure for summary judgment and the burdens on the parties established by District Court Rule 13, 12 O.S.1981, ch. 2, app. Where the moving party offers evidence which shows that there is no substantial controversy as to any fact material to the cause of action, and that fact is in the movant's favor, the

Q And have you put a pencil to determine how much you would be charging if you had based your time and your claim for fee on an hourly rate in this particular case?
A Yes, I have, $200.00 an hour, give or take a few dollars.
Q How about $222.00 an hour?
A That would be fine, round it off at $225.00."
Mr. Benjamin E. Butts, an attorney at law, was called as a witness on behalf of the objectors. He testified that based upon an hourly rate of $50.00 per hour, and on the basis of time testified by Mr. Clarke, the attorney fee would be $61,800.00, and he further testified:

"A I figured a total fee on the matter based on just a raw time consideration of $65,-000.00; Then I also considered the size of the estate, which quite frankly is considerably larger than anything I have ever had anything to do with, and I felt like and agree that there is an additional responsibility that attaches to you simply because of size of numbers and that there has been an additional problem in the matter because of having eight executors, the file discloses some controversy just on its face. I would double the $65,000.00 as the increment for responsibility, extraordinary difficulty, and that is how I got the $130,-000.00."

party opposing the motion has the burden of showing evidence, not mere contentions, which would justify a trial. *Weeks v. Wedgewood Village, Inc.*, 554 P.2d 780, 785 (Okla.1976).

■ The motion for summary judgment and attached evidence submitted by the executors clearly demonstrate no substantial controversy as to any material fact. The executors submitted evidence that the attorneys' fees were set by the court; paid to Clarke and Van Wagner, Inc., pursuant to a court order; appealed to the supreme court; determined to be excessive; requested to be returned; and still retained by Clarke and Van Wagner. From the evidence presented in support of the motion for summary judgment, it is clear that Clarke and Van Wagner were refusing to return $125,000 in attorneys' fees which had been determined to be excessive.

In opposition to the motion for summary judgment, Clarke and Van Wagner attached an affidavit of Sidney R. Clarke, III, which in effect merely repeats the contentions found in the objection to the motion. Clarke stated that "there are additional facts to which he and George Van Wagner and Executors ... would testify to if called as witnesses." However, in neither the objection nor Clarke's affidavit did the attorneys set out any of these alleged "facts in controversy."

On review to this court, all inferences and conclusions to be drawn from the underlying facts in the record presented below should be viewed in the light most favorable to the party opposing the motion. *Rose v. Sapulpa Rural Water Co.*, 631 P.2d 752, 754 (Okla.1981). This court has the obligation to examine the items enumerated under Rule 13, which are found in the record, to determine what facts are material to the cause of action and to determine whether the evidentiary materials show no substantial controversy as to any material fact. *Weaver v. Pryor Jeffersonian*, 569 P.2d 967, 973 (Okla.1977).

In light of the above standard, we find that the evidence presented to the trial court in opposition to the motion for summary judgment neither shows a substantial controversy, nor complies with the requirements of Rule 13. The court in *Weeks v. Wedgewood Village, Inc.*, specifically held that the "mere denial in a pleading, repeated in an affidavit unsupported by any proof is not sufficient to require the credibility of the opposing party to be determined on trial." 554 P.2d at 784.

Rule 13 provides that the party opposing the motion may file an objection "to which he may attach affidavits and other materials containing facts that would be admissible in evidence, but the adverse party cannot rely on the allegations or denials in his pleading." The rule further specifies that where a party sets forth the specific material fact claimed to be in controversy, *he must accompany that with references to pages and paragraphs found in materials in the record.* The consequences of a party's failure to comply are found in the final sentence of Rule 13(b) which states: "If the motion for judgment is granted, the party or parties filing the objection cannot on appeal rely on any fact or material that is not referred to or included in the objection in order to show that a substantial controversy exists."

From our examination of the record, the only fact which Clarke and Van Wagner attempt to put in controversy is an alleged agreement they had with the executors. Clarke's affidavit states that the fee was paid in accordance with such an agreement. However, Clarke and Van Wagner do not demonstrate the existence of an agreement, nor do they ever state the terms of the alleged agreement. Even if the terms of the agreement were material, in order to be considered by the court in ruling on the motion for summary judgment, the terms would have to be included in the record. Once again, only the *actual record* which the parties have presented is what is considered—not the potential record. *Ross v. City of Shawnee*, 683 P.2d 535, 55 O.B.J. 1353 (Okla.1984).

The presence of an agreement is totally unsupported by the record, and in fact is contrary to what the record shows. Attached to the executors' motion is a copy of a letter from Judge Foster, the probate judge, stating:

I am in receipt of the minutes of the Executors Meeting of September 18, 1975, I have noted in the minutes that there was a matter of executors and attorneys fees brought up at the Executors Meeting. I might advise parties that the matter of the attorneys and executors *fees will be a matter that will be determined by the Court pursuant to a proper application and proper hearing* —and until such time as these fees are set by the Court—the Executors need not concern themselves with the same .... The fees are a matter of law and of the Court's discretion and the Court will exercise the determination as to the amount of the fees at the proper time. (emphasis added)

From the record presented to the trial court below, we find no substantial controversy as to any material fact.

## II

■ Clarke and Van Wagner further contend that the trial court erred as a matter of law in finding that the executors were entitled to reimbursement of the excessive fee. The attorneys contend that they were hired by the executors and not the estate, therefore if any party should bear the loss as to the excessive fee, the loss should fall on the executors. We agree that where the conflict exists between executors and heirs, any loss for misappropriation of estate funds falls on the executors. In support of this proposition the attorneys cite *State ex rel. Cohen v. District Court*, 53 Mont. 210, 162 P. 1053 (1917); *In re Godwin's Estate*, 16 Wash.2d 310, 133 P.2d 281 (1943); and *Corpus Christi Bank & Trust v. Cross*, 586 S.W.2d 664 (Tex.Civ.App.1979). However, we note that all these cases concern payments which the executor made voluntarily or without authority. None of the cases

cited by the attorneys would permit an attorney to retain a fee paid pursuant to a court order which later is determined to be excessive.

Nor do we find *In re Ferguson's Estate*, 124 N.J.Eq. 573, 3 A.2d 439 (1939), persuasive on this issue. In *Ferguson*, a legatee sued the personal representative for an attorney's fee paid from the estate. The executor had voluntarily paid the attorney's fee set by the court prior to the time when the right to appeal had expired. The executor himself did not challenge the reasonableness of the fee. When the size of the fee was attacked by a legatee on appeal a number of years later, the court found the executor responsible for the overpayment because he paid the attorney's fee prior to the time when an appeal might have been taken.

■ However, such is not the fact situation in the instant case. Certain of the executors in the Harber estate did appeal the award of attorneys' fees. Clarke and Van Wagner misstate the facts in pointing out that none of the executors appealed the award. While we note that the executors as a party were listed as "appellees" in the previous appeal, we also note that four of the executors were listed as appellants. Clarke and Van Wagner would have this court believe that none of the executors challenged the award.

The executors were required by law to pay certain estate expenses. 58 O.S.1981 §§ 591 and 594. Oklahoma law permits payment of reasonable attorney's fees as appropriate estate expenses and grants these expenses priority. *Tims Funeral Home v. Phillips*, 501 P.2d 493, 496 (Okla. 1972). In the instant case the executors paid the attorneys' fee as ordered by the court and then challenged the reasonableness of that fee. If they had not appealed and obtained a modification of such a fee they would have been derelict in their fiduciary duties. These duties also require them now to seek reimbursement of the excessive fee.

### III

Attorneys argue that in the absence of fraud, mistake, or duress a party who pays money voluntarily cannot recover those funds. Clarke and Van Wagner have cited to no cases where an attorney who receives an unreasonable and excessive fee is allowed to retain that fee. The majority of jurisdictions require a forfeiture of attorneys' fees if those fees are determined excessive. *See, e.g., McInerney v. Massasoit Greyhound Association,* 359 Mass. 339, 269 N.E.2d 211 (1971). In *In re Estate of Edwards,* 41 Misc.2d 703, 246 N.Y.S.2d 489 (1963), the court ordered a return of attorneys' fees where those fees had been challenged and determined excessive. Part of the issue before the court concerned a controversy between two attorneys as to who should be responsible for return of the excessive fee. The court stated that it was uncontroverted that both attorneys performed some services for the estate and that both had shared the fee. The court thus found the attorneys jointly and severally liable for the refund of the fees.

Indeed, the courts have even required an attorney to return part of a fee despite the client's consent to the amount. *Matter of Cohen,* 169 A.D. 544, 546–47, 155 N.Y.S. 517, 520 (1915). In *Rice v. Perl,* 320 N.W.2d 407, 411 (Minn.1982), the Minnesota Supreme Court determined that forfeiture of a fee may occur irrespective of the intent and motives of the attorney. However, the outer limits of this forfeiture cannot exceed the amount of the *earned fee.*

The rule that a person cannot recover money which he voluntarily paid cannot be applied to the fiduciary relationship between attorney and client. In *Haunstein v. McCalister,* 172 Okl. 613, 617, 46 P.2d 552, 556 (1935), the Oklahoma Supreme Court declared that even when an attorney has a contract with his client, the attorney "is not entitled to recover more than reasonable compensation for his services, regardless of the contract price."

### IV

Lastly, Clarke and Van Wagner argue that under Oklahoma law the individual attorneys cannot be held liable to repay an excessive fee which was paid to their professional corporation, Clarke and Van Wagner, Inc. In support of this contention the attorneys cite *Hall v. Sullivan-Dollars, Inc.,* 471 P.2d 453 (Okla.1970). The court in *Hall* determined that as a general rule, the officers and employees of a corporation are not liable to creditors or third persons for acts or debts of the corporation unless they bind themselves individually. *Hall* recites this general rule concerning business corporations, corporate law and personal liability. Such is indeed the law in Oklahoma.

However, the law which is applicable to Clarke and Van Wagner, Inc., the individual attorneys, and the facts of the instant case, is found in the Oklahoma Professional Corporation Act. Title 18 O.S.1981 § 802, sets out the statutory policy for permitting professional corporations as follows:

> This act shall be so construed as to effectuate its general purpose of making available to professional persons the *benefits of the corporate form for the business aspects of their practices while preserving the established professional aspects of the personal relationship between the professional person and those he serves.* (emphasis added)

The Act further provides in section 812 that the relationship between a person rendering professional services and a person receiving such services is not altered by use of a professional corporation. Section 813 states that nothing in the Act restricts or limits the authority and duty of the boards which license and regulate the professions. Finally, section 814 states: "No professional corporation may do any act which is prohibited to be done by individual persons licensed to practice a profession which the professional corporation is organized to render."

In *Deaton, Gassaway & Davison, Inc. v. Thomas,* 564 P.2d 236, 239–40 (Okla.1977), the Oklahoma Supreme Court recognized the differences in professional corporations

and business corporations. The court noted the legislative intent behind the Act was not to alter any liability or relationship of a licensed professional with the person receiving the services.

■ An attorney in Oklahoma is clearly prohibited from receiving a fee which is excessive or unreasonable. As stated in *State ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659, 661 (Okla.1979) (emphasis supplied):

"(A) A lawyer shall not enter into an agreement for, *charge, or collect* an illegal or *clearly excessive* fee.

(B) A fee is *clearly excessive* when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee."

In the instant case, the court of appeals examined the record before it and determined that the $275,000 attorneys' fee was excessive. This court finds it incredible that Clarke and Van Wagner, as two licensed attorneys in this state, would even argue that they are not required to return the money. The professional corporation was never intended as a shield to protect individual attorneys from liability for their actions.

This statement is echoed in cases from sister states construing their professional corporation statutes. In *In the Matter of the Florida Bar*, 133 So.2d 554, 556 (Fla. 1961), the Florida Supreme Court stated:

[T]he highly personal obligation of the lawyer to his client is in no way adversely affected. The individual practitioner, whether a stockholder in a corporation or otherwise, will continue to be expected to abide by all of the Rules and Canons of professional ethics heretofore or hereafter required of him. The corporate entity as a method of doing business will not be permitted to protect the unfaithful or the unethical. As a matter of fact, the corporate entity itself will automatically come within the ambit of our jurisdiction in regard to discipline. In addition to the individual liability and responsibility of the stockholder, the corporate entity will

be liable for the misprisions of its members to the extent of the corporate assets.

Similar statements were made by the New Hampshire Supreme Court in *Petition of New Hampshire Bar Association*, 110 N.H. 356, 266 A.2d 853, 854 (1970). There the court declared: "All attorneys as well as the professional association itself is [*sic*] subject to the disciplinary powers of the court. The professional association *places no barrier between the authority of the court and the individual practitioner.*" (emphasis added)

We note that some states have refused to limit the liability of incorporated attorneys for the malpractice of their associates. See, *Petition of Bar Association of Hawaii*, 55 Hawaii 121, 516 P.2d 1267, 1268 (1973). The Hawaii Supreme Court noted that the purpose of allowing attorneys to incorporate was to take advantage of tax benefits. In finding that incorporation would not affect the unlimited liability of individual attorneys, the court stated: "It is axiomatic, however, that the promulgation of any rule allowing incorporation shall not be in derogation of the attorney-client relationship to the detriment of the client."

We find no special significance in Clarke and Van Wagner's contentions that the professional corporation and not the individual attorneys should be responsible for the return of the fee. The orders in the probate court as well as the previous appeal describe the fee as "their fee," which was paid to the "attorneys." It appears that the attorneys would seek to re-litigate the reasonableness of the fee in spite of a previous appellate court's determination that the fee was clearly excessive and unreasonable. In finding that the attorneys, as well as their professional corporation, must forfeit the excessive fee, we agree with the court in *Street v. Sugerman*, 202 So.2d 749, 751 (Fla.1967), which stated: "The privilege of incorporation was most definitely not created or extended in order that those availing themselves of the bene-

fits could be cloaked with an immunity inimical to legal order and public interest."

One of the most important public interests of the courts of this state is the integrity of the bar and regulation of its members. The excessive attorneys' fee must be returned to the estate, regardless of whether it comes from the professional corporation or the individual attorneys.

The summary judgment is in all respects affirmed.

REIF, J., concurs, and BACON, J., concurs in result.