2005 OK CIV APP 105

**James ADAMS and Kim Adams, Plaintiffs/Appellants,**

v.

**Stephen J. MORIARTY, Receiver for the Hickman Agency, Inc., an Oklahoma Corporation, Merl William Hickman, Sr., an individual, Sarah L. Hickman, an individual, and Merl William Hickman, Jr., an individual, Defendant/Appellee.**

**No. 101,856.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Nov. 10, 2005.

Mark B. Toffoli, Hobrook & Toffoli, Oklahoma City, OK, and Kermit M. Milburn, Henson, Henson, Henson, Marshall & Milburn, L.L.P., Shawnee, OK, for Plaintiffs/Appellants.

John F. Fischer, Leif Swedlow, Andrews Davis, P.C., Oklahoma City, OK, for Defendant/Appellee.

Opinion by KENNETH L. BUETTNER, Chief Judge.

¶ 1 Plaintiffs/Appellants James and Kim Adams appeal from summary judgment granted in favor of Defendant/Appellee Stephen J. Moriarty, Receiver for The Hickman Agency, Inc., Merl William Hickman, Sr., Sarah L. Hickman, and Merl William Hickman, Jr. (Moriarty or Receiver). Shortly after James Adams deposited nearly $400,000 with the Hickman Agency, Moriarty was appointed as receiver following discovery of fraud allegedly committed by the Hickmans. The Adamses opposed Receiver's plan to distribute funds remaining in the Hickman accounts to all investors on a pro-rata basis and they sued Receiver to recover the money they invested, asserting their funds were the last to be invested with Hickman and were therefore traceable. Undisputed evidence supports summary judgment and we affirm.

¶ 2 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group,* 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.,* 1999 OK 73, 988 P.2d 1275.

¶ 3 The Adamses have failed to file a record as required by Oklahoma Supreme Court Rule 1.36(d). We therefore review only the Supplemental Record on Appeal filed by Receiver, which contains the Adamses' Petition, Receiver's Motion for Summary Judgment, the Adamses' Objection to Motion for Summary Judgment, and Receiver's Reply to the Adamses' Objection.

¶ 4 In their Petition, filed September 27, 2004, the Adamses alleged that Merl William Hickman, Sr., Merl William Hickman, Jr., and Sarah L. Hickman were the officers, directors, and sole stockholders of The Hickman Agency, Inc., an Oklahoma corporation. The Adamses further alleged that on November 28, 2003, they entered various agreements with the Hickman Agency and pursuant to those agreements, the Adamses deposited $396,370.85 with the Hickman Agency. That money represented an IRA account and the Adamses understood that the money was to be invested by the Hickmans as an IRA. The Adamses next asserted that instead of investing their money as an IRA, the Hickmans deposited the money in the general operating account of the Hickman Agency.

¶ 5 The Adamses asserted that after they made their deposit with the Agency, the Hickmans engaged in "various acts of willful misfeasance, mismanagement, and waste, in violations of the fiduciary duties and in betrayal of the trust imposed upon them by their several relationships with" the Adamses. The Adamses asserted that the Hickmans acted for their own advantage in wasting and dissipating the Adamses' investment. The Adamses alleged that the Pottawatomie District Court appointed Receiver December 17, 2003 pursuant to a suit the Oklahoma Department of Securities filed against the Hickmans. The Adamses alleged they had no adequate remedy at law and requested an accounting by the Receiver to recover the money they invested with the Hickman Agency.

¶ 6 For their second cause of action, the Adamses alleged that the money they invested with the Hickman Agency included virtually all of the Adamses' retirement savings, and they asked that the court impose a trust on those funds in favor of the Adamses and that the court declare those funds to be the property of the Adamses, and order the Receiver to transfer those funds back to the Adamses.

¶ 7 In his Motion for Summary Judgment, filed November 9, 2004, Receiver asserted that as a matter of law, the Adamses cannot obtain priority over other investors who may

be owed restitution by the Hickmans in the Oklahoma Department of Securities case. Receiver alleged the following facts were undisputed:

1. Receiver admitted all the factual allegations of the Adamses Petition, except as clarified below and except for the assertions that the Adamses have no adequate remedy at law and that Receiver holds the Adamses' funds in trust.

2. Receiver asserted the Hickmans' records showed a December 1, 2003 deposit of $396,370.85 by James Adams.

3. a) The deposit was in the name of James Adams only.

b) The deposit was placed in a general operating account in which the funds of numerous other investors were deposited and commingled.

c) Four other investors made deposits with the Hickmans contemporaneously or after James Adams' deposit, in the aggregate amount of $131,000.

d) The deposits of over 150 investors over the course of the Hickmans' scheme, between July 1996 and December 2003, totaled $12,366,295.90.

e) Of those deposits, $3,072,514.44 had been paid out to various investors before the appointment of Receiver.

4. The Hickmans' conduct from July 1996 through December 2003 constituted a "Ponzi scheme" in which clients' investments were not actually invested but instead were misappropriated for the Hickmans' personal gain, and in which part of the newer investments were used to pay earlier investors to maintain the deception that their investments were gaining value.

5. The aggregate value of all the Hickmans' assets was insufficient to satisfy the claims of all affected investors. Receiver was marshaling and liquidating the assets and administering the claims of investors. Receiver estimated each investor would ultimately receive five to ten cents on the dollar for money invested with the Hickmans. Recognition of James Adams's specific claim as superior would decrease the recovery available to other investors.

6. An accounting was part of the relief being sought in the case filed by the Oklahoma Department of Securities. Reports were being submitted for the benefit of all investors, including James Adams, in that case.

The evidentiary materials Receiver attached to his motion for summary judgment included Receiver's affidavit, Merl William Hickman, Sr.'s plea agreement, the Oklahoma Department of Securities' Petition for Equitable Relief filed against the Hickmans, the Order of Permanent Injunction and Order of Restitution entered against the Hickmans in the Department of Securities case,[1] and the order appointing Receiver.

¶ 8 Receiver's first argument in support of summary judgment was that James Adams had no claim because one investor in a Ponzi scheme is not entitled to preference over other investors. Receiver also argued that the Adamses' Petition was an improper collateral attack on the existing Department of Securities case in which Receiver was appointed. Receiver asserted that any relief James Adams was entitled to would be determined in the Oklahoma Department of Securities case. Receiver asserted further that the order appointing him as receiver prohibited claimants from filing separate lawsuits interfering with the exclusive jurisdiction being exercised in the existing Hickman case. Lastly, Receiver argued that summary judgment against Kim Adams was appropriate because the funds at issue were invested by James Adams and because IRA accounts cannot be held jointly, citing 26 U.S.C. § 408(a).

¶ 9 In their objection to summary judgment, the Adamses did "not contest the majority of" Receiver's undisputed facts, but they claimed that because discovery had not been completed they were not in a position to stipulate as to Receiver's statements about the books and records of the Hickman Agency. The Adamses also alleged that their invested funds were traceable and that in such case, the court may impose a trust on

---

1. That order directed the Hickmans to pay $8,465,078 in restitution to any and all investors who purchased securities from the Hickmans or who transferred money to the Hickmans for the purpose of making securities investments.

those funds instead of directing that the depositor of traced funds receive only a pro-rata share like other investors. The Adamses also contended that Kim Adams had a claim, despite her name not being on the deposit made with the Hickmans, because Kim Adams held an interest in the marital estate of which James Adams's deposit was part. The Adamses lastly argued that Merl William Hickman Sr.'s plea agreement provided undisputed evidence of the existence of fraud and they requested partial summary judgment on that element of their constructive trust claim.

¶ 10 The Adamses attached no evidence to their objection to summary judgment. In opposing a motion for summary judgment a party must attach affidavits or other admissible evidentiary materials to show a dispute of fact exists. *Bray v. Thomas Energy Systems, Inc.,* 1995 OK CIV APP 146, 909 P.2d 1191, 1194; Rule 13(b), Rules for District Courts of Oklahoma, 12 O.S.2001 Ch. 2, App. 1. The party cannot rely on the allegations in his pleadings alone to demonstrate a dispute of fact. *Id.* Additionally, a summary judgment motion must be decided on the record actually presented, not on a record which is potentially possible; a party opposing summary judgment therefore must present evidence, not mere contentions, justifying a trial on the merits. *American Nat. Bank and Trust Co. of Shawnee v. Clarke & Van Wagner, Inc.,* 1984 OK CIV APP 37, 692 P.2d 61, 63–64. In summary judgment proceedings, both parties must support their positions with evidentiary materials. *Howell ex rel. Howell Family Revocable Trust v. Texaco Inc.,* 2004 OK 92, ¶ 16, 112 P.3d 1154.

¶ 11 In response to the Adamses' objection to summary judgment, Receiver asserted that the required elements for a constructive trust are not present in this case. Receiver argued that the purpose of a constructive trust is to avoid unjust enrichment, but that Receiver was not being unjustly enriched and the Hickmans, whose assets had been placed under the control of Receiver, also no longer

stood any chance of being unjustly enriched in the absence of a constructive trust. Receiver also argued that although James Adams could show he deposited a certain amount with the Hickmans, Adams could not distinguish the funds he deposited from the funds in the Hickmans' general operating account and that therefore the funds could not be traced.

¶ 12 The authority cited by Receiver makes clear that in the case of a Ponzi scheme,[2] remaining assets must be distributed to victims on a pro-rata basis unless a particular creditor's assets are able to be specifically traced. In the original Ponzi scheme Supreme Court case, *Cunningham, supra,* the Supreme Court indicated that once the party fraudulently collecting funds has commingled the funds of various investors in a single account, those assets lose their character as the peculiar assets of their investor. The court held that if the claimants were able to trace the funds fraudulently acquired by the debtor then those claimants "would have been endeavoring to get their own money, and not money in the estate of the bankrupt." *Cunningham,* 265 U.S. at 11, 44 S.Ct. at 426. The court went on to state that "to succeed they must trace the money and therein they have failed." *Id.*

¶ 13 In the case of *In re M & L Business Mach. Co., Inc.,* 59 F.3d 1078 (10th Cir.1995), 1,700 individuals and organizations had invested about 74 million dollars during the scheme and it was not possible to trace individual investments. The court held that transfers to particular investors would be avoided as preferences in the schemer's bankruptcy proceeding. The court offered this analysis of the rule in cases such as the instant one:

> The requirement that a defrauded party trace its lost assets does not undermine the purpose of the general rule that property fraudulently obtained is not property of the estate. This rule is based upon the desire to prevent certain creditors from benefitting from the debtor's fraud at the

---

**2.** Neither party disputes that the Hickmans' conduct here constituted such a scheme. In *Cunningham v. Brown,* 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924) the U.S. Supreme Court explained the scheme conducted by Charles Ponzi, who offered to repay loans at 150% within 90 days. Instead of investing the loaned funds, Ponzi used successive loans to meet his promises to pay back earlier lenders until his scheme was exposed, he was unable even to pay back 100% of the loaned amounts, and he declared bankruptcy.

expense of those defrauded. Thus, where fraudulently obtained assets are held by the debtor but are readily distinguishable from assets to which general creditors have a claim, it is proper to return the property to the defrauded party rather than distribute it through the estate, which of course seeks to distribute assets equitably among all creditors or as many as possible. In a Ponzi scheme, or other scenario where creditors are almost exclusively defrauded parties, there is no distinguishing characteristic which promotes the interests of one over the other. Consequently, absent direct identification of the defrauded funds, it is to the detriment of all other similarly situated creditors to favor one defrauded party over another.

59 F.3d at 1081–1082 (citations omitted).

■ ¶ 14 The Adamses have not disputed Receiver's assertion that the Hickmans deposited James Adams's investment in the Hickmans' general operating account. The Adamses also do not dispute that the Hickmans deposited $131,000 invested by other defrauded clients in their general operating account after James Adams's deposit. The Adamses attempt to distinguish the authority cited by Receiver based on their assertion their invested funds are traceable, but the Adamses have failed to present any evidence showing their deposited funds could be traced distinctly from the other commingled funds in the Hickmans' general operating account. Without any showing that their funds are specifically traceable, Adamses' claim would have the effect of allowing the most recent depositors to withdraw any money remaining in the Hickman accounts and thereby leaving those who happened to make their deposits earlier in time without any remedy at all. That result is clearly inequitable and not in accord with the rules established in similar cases.

¶ 15 The undisputed facts show that Receiver is entitled to judgment as a matter of law and we therefore AFFIRM.

HANSEN, J., and JOPLIN, P.J., concur.